AO 93  (Rev. 11/13) Search and Seizure Warrant (USAO CDCA Rev. 04/17)

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) | Case No. 8:19-MJ-419 |
| Ten Digital Devices in the Custody of the Internal Revenue Service – Criminal Investigation | ) ) ) ) | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Central District of California *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

Such affidavit(s) or testimony are incorporated herein by reference.

**YOU ARE COMMANDED** to execute this warrant on or before <u>14 days from the date of its issuance</u> *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>the U.S. Magistrate Judge on duty at the time of the return through a filing with the Clerk's Office.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for_____days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:      <u>May 24, 2019, at 11:30 am</u>          **DOUGLAS F. McCORMICK**
                                                                              *Judge's signature*

City and state:      <u>Santa Ana, CA</u>          <u>United States Magistrate Judge Douglas F. McCormick</u>
                                                                 *Printed name and title*

AUSAs:  Julian L. André (213.894.6683) & Brett A. Sagel (714.338.3598)

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| **Certification** |
|---|

 I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

**PROPERTY TO BE SEARCHED**

The following digital devices (the "SUBJECT DEVICES") or forensic images thereof, which are currently maintained in the custody of the Internal Revenue Service-Criminal Investigation ("IRS-CI") in Los Angeles and Santa Ana, California:

1.    Dell PowerEdge R410, bearing serial number 52RKCK1, obtained by IRS-CI from MixinIT via consent from the court-appointed receiver for Eagan Avenatti LLP ("EA LLP") on or about April 4, 2019 ("SUBJECT DEVICE 1");

2.    Dell PowerEdge R710, bearing serial number 2GMPCK1, obtained by IRS-CI from MixinIT via consent from the court-appointed receiver for EA LLP on or about April 4, 2019 ("SUBJECT DEVICE 2");

3.    HP ProLiant DL380 G7, bearing serial number A1979827, obtained by IRS-CI from MixinIT via consent from the court-appointed receiver for EA LLP on or about April 4, 2019 ("SUBJECT DEVICE 3");

4.    HP ProLiant DL380 G7, bearing serial number A1979828, obtained by IRS-CI from MixinIT via consent from the court-appointed receiver for EA LLP on or about April 4, 2019 ("SUBJECT DEVICE 4");

5.    HP ProLiant DL380 G7, bearing serial number A1884814, obtained by IRS-CI from MixinIT via consent from the court-appointed receiver for EA LLP on or about April 4, 2019 ("SUBJECT DEVICE 5");

6.    HP ProLiant DL160 G6, bearing serial number MXQ9520ABM, obtained by IRS-CI from MixinIT via consent from the court-appointed receiver for EA LLP on or about April 4, 2019 ("SUBJECT DEVICE 6");

7.    A black USB drive marked "27989," which was seized by law enforcement agents from AVENATTI on March 25, 2019.  IRS-CI obtained the forensic image of the digital device from the United States Attorney's Office for the Southern District of New York ("SDNY USAO") on or about May 22, 2019 ("SUBJECT DEVICE 7");

8.    A blue and silver USB drive marked "RAEN," which was seized by law enforcement agents from AVENATTI on March 25, 2019.  IRS-CI obtained the forensic image of the digital device from the SDNY USAO on or about May 22, 2019 ("SUBJECT DEVICE 8");

9.    A silver and purple USB drive marked "8025328," which was seized by law enforcement agents from VENATTI on March 25, 2019.  IRS-CI obtained the forensic image of the digital device from the SDNY USAO on or about May 22, 2019 ("SUBJECT DEVICE 9"); and

10.    A compact disc containing scanned copies of miscellaneous documents that were seized by law enforcement agents from AVENATTI's briefcase on March 25, 2019.  The SDNY USAO scanned the documents and placed them on the disc and provided the disc to IRS-CI on or about May 17, 2019 ("SUBJECT DEVICE 10") (collectively, the "SUBJECT DEVICES").

SUBJECT DEVICES 1 through 6 are currently held in the custody of IRS-CI in Los Angeles, California.  SUBJECT DEVICES 7 through 10 are currently held in the custody of IRS-CI in Santa Ana, California.

**ATTACHMENT B**

**I.   ITEMS TO BE SEIZED**

1.    The items to be seized are evidence, contraband, fruits, and/or instrumentalities of violations of 26 U.S.C. § 7201 (attempt to evade or defeat tax); 26 U.S.C. § 7202 (willful failure to collect or pay over tax); 26 U.S.C. § 7203 (willful failure to pay tax or file return); 26 U.S.C. § 7212 (interference with administration of internal revenue laws); 18 U.S.C. § 152 (concealment of assets in bankruptcy); 18 U.S.C. § 157 (bankruptcy fraud); 18 U.S.C. § 1028A (aggravated identity theft); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1344 (bank fraud); and 18 U.S.C. § 1957 (money laundering) (the "Subject Offenses"), namely:

     a.    Records, documents, programs, applications, or materials from January 2011 through March 25, 2019, relating to the ownership of Global Baristas US, LLC ("GBUS"); Global Baristas, LLC ("GB LLC"); GB Autosport, LLC ("GB Auto"); GB Hospitality LLC ("GB Hospitality"); Doppio Inc. ("Doppio"); Eagan Avenatti LLP ("EA LLP"); Avenatti & Associates, APC ("A&A"); and Augustus LLP (collectively, the "Subject Entities").

     b.    Records, documents, programs, applications, or materials from January 2011 through March 25, 2019, relating to Michael J. Avenatti's ("AVENATTI") control or management of any of the Subject Entities and/or The X-Law Group, PC ("X-Law Group").

i

c.    Records, documents, programs, applications, or materials from January 2011 through March 25, 2019, relating to the organizational or management structure of any of the Subject Entities and/or X-Law Group.

d.    Records, documents, programs, applications, or materials from January 2011 through March 25, 2019, relating to the finances of any of the Subject Entities, including assets, income, liabilities, accounts receivable, accounts payable, and expenses.

e.    Records, documents, programs, applications, or materials from January 2011 through March 25, 2019, relating to the personal finances of Michael Avenatti ("AVENATTI"), including information relating to AVENATTI's assets, debts, income, expenses, and net worth.

f.    Records, documents, programs, applications, or materials from January 2011 through March 25, 2019, relating to the accounting records for AVENATTI and/or any of the Subject Entities, including any Microsoft Dynamics NAV, QuickBooks, or other electronic accounting data, files, or records.

g.    Records, documents, programs, applications, or materials from January 201 through March 25, 2019, relating to any financial transactions, including any proposed or potential financial transactions, involving any of the Subject Entities, and/or AVENATTI.

h.    Records, documents, programs, applications, or materials from January 2011 through March 25, 2019, relating to any payments, checks, credits, wire transfers, commodities,

services, or other things of value paid, provided, delivered, or transferred, directly or indirectly, to AVENATTI and/or any of the Subject Entities.

   i. Records, documents, programs, applications, or materials from January 2011 through March 25, 2019, relating to any financial relationship between AVENATTI and/or any of the Subject Entities on one hand and X-Law Group and/or F.M. on the other hand.

   j. Records, documents, programs, applications, or materials from January 2011 through March 25, 2019, relating to financial decisions AVENATTI and/or J.R. made on behalf of any of the Subject Entities, including decisions to authorize payments on behalf of any of the Subject Entities and transfer money to or from any of the Subject Entities.

   k. Records, documents, programs, applications, or materials from January 2011 through March 25, 2019, relating to communications between AVENATTI and/or J.R. and any financial institution regarding the transfer of funds to or from any account associated with AVENATTI and/or any of the Subject Entities.

   l. Records, documents, programs, applications, or materials from January 2011 through March 25, 2019, relating to any loans or other financing agreements, including any proposed or potential loans or other financing agreements, involving any of the Subject Entities and/or AVENATTI.

m.     Records, documents, programs, applications, or materials from January 2011 through March 25, 2019, relating to the payroll obligations of the Subject Entities.

n.     Non-privileged records, documents, programs, applications, or materials from January 2011 through March 25, 2019, relating to the federal, state, and/or local tax obligations, tax returns, tax liabilities, or tax payments of any of the Subject Entities and/or AVENATTI.

o.     Non-privileged records, documents, programs, applications, or materials from January 2011 through March 25, 2019, relating to any liens, levies, garnishments, judgments, encumbrances, or tax-related investigations or actions associated with any of the Subject Entities and/or AVENATTI.

p.     Records, documents, programs, applications, or materials from January 2011 through March 25, 2019, relating to attorneys' fees or costs earned or collected by EA LLP, A&A, and/or AVENATTI, including attorney-client fee contracts, engagement letters, fee agreements, cost-sharing agreements, fee-sharing agreements, settlement agreements, and client billing records, but excluding any such records relating to the representations of Stephanie Clifford or Julie Swetnick.

q.     Records, documents, programs, applications, or materials from January 2011 through March 25, 2019, relating to any of the Subject Entities' and/or AVENATTI's contractual relationships, including drafts and final versions of any executed, proposed, or potential contracts and agreements, bills of sale, correspondence regarding payments, and correspondence

regarding the cancellation or modification of contracts and/or agreements.

r.   Records, documents, programs, applications, or materials from January 2011 through March 25, 2019, relating to any of the Subject Entities' and/or AVENATTI's bank account information.

s.   Records, documents, programs, applications, or materials from January 2011 through March 25, 2019, relating to the physical whereabouts of AVENATTI, and/or J.R., including calendars and calendar entries.

t.   Records, documents, programs, applications, or materials from April 1, 2011, to March 25, 2019, relating to AVENATTI and/or EA LLP's representation of Client 1, including the approximately $4 million settlement payment that was transferred to one of EA LLP's California Bank & Trust attorney trust account in or around January 2015.

u.   Records, documents, programs, applications, or materials from December 2016 to March 25, 2019, relating to AVENATTI and/or EA LLP's representation of Client 2, including the approximately $2.75 million settlement payment that was transferred to one of EA LLP's California Bank & Trust attorney trust account in or around January 2017.

v.   Records, documents, programs, applications, or materials relating to an agreement to purchase and the purchase of a private Honda jet from Honda Aircraft Company LLC and/or the funds used to purchase the private Honda jet.

w.    Records, documents, programs, applications, or materials from January 1, 2014, to March 25, 2019, relating to AVENATTI and/or EA LLP's representation of Client 3, including the approximately $1.6 million settlement payment that was transferred to one of AVENATTI's City National Bank attorney trust account in or around January 2018.

x.    Records, documents, programs, applications, or materials from January 1, 2017, to March 25, 2019, relating to AVENATTI's, EA LLP's, X-Law Group, and/or F.M.'s representation of Client 4 and Client 5, including the approximately $8,146,288 payment that was transferred to one of AVENATTI's City National Bank attorney trust accounts in or around March 2018.

y.    Non-privileged records, documents, programs, applications, or materials from March 7, 2013, to March 25, 2019, relating to the settlement of litigation against the National Football League ("NFL") relating to the 2011 Super Bowl (the "Super Bowl Litigation"), including documents reflecting settlement payments, attorney fees, costs, expenses, and the distribution of settlement proceeds to EA LLP, AVENATTI, and any of EA LLP or AVENATTI's clients in the Super Bowl Litigation.

z.    Records, documents, programs, applications, or materials from January 2013 through March 25, 2019, relating to the payroll and tax preparation services that Paychex provided to EA LLP and/or A&A, including any records, documents, programs, applications, or materials relating to changes in the payroll and tax services to be provided by Paychex.

aa.  Records, documents, programs, applications, or materials from January 2013 through March 25, 2019, relating to the payroll and tax preparation services that Ceridian HCM Inc. ("Ceridian") provided to GBUS, including any records, documents, programs, applications, or materials relating to changes in the payroll and tax services to be provided by Ceridian.

bb.  Records, documents, programs, applications, or materials from January 2013 through March 25, 2019, relating to the sale or purchase of TC Global, Inc. or Tully's Coffee.

cc.  Records, documents, programs, applications, or materials from January 2013 through March 25, 2019, relating to the purchase or sale, including any proposed or attempted purchase or sale, of GBUS, GB LLC, or Doppio.

dd.  Records, documents, programs, applications, or materials from January 2013 through March 25, 2019, relating to the value of GBUS or GB LLC.

ee.  Records, documents, programs, applications, or materials from January 2013 through March 25, 2019, relating to GBUS's and GB LLC's merchant credit card processing accounts (the "merchant accounts"), including contracts, agreements, account applications, and correspondence regarding changes to the merchant accounts.

ff.  Records, documents, programs, applications, or materials from January 2018 through March 25, 2019, relating to creation, formation, business purpose, ownership agreement, finances, of Augustus LLP.

gg.  Records, documents, programs, applications, or materials from January 2011 through March 25, 2019, relating to the sale, rental, lease, purchase, maintenance, renovation, or remodeling of any of AVENATTI's residences, including his residences in Newport Beach, California; Laguna Beach, California; and Los Angeles, California.

hh.  Records, documents, programs, applications, or materials from January 2011 through March 25, 2019, relating to continuing legal education ("CLE") courses taken by AVENATTI, including any professional responsibility CLE courses, ethics CLE courses, or tax CLE courses.

ii.  Records, documents, programs, applications, or materials from January 2011 through March 25, 2019, relating to any of the Subject Entities' employee handbooks or manuals, employment contracts, compensation records, and employee lists.

jj.  Records, documents, programs, applications, or materials relating to any locations or services used by AVENATTI and/or any of the Subject Entities to store physical or electronic records.

kk.  With respect to any SUBJECT DEVICE containing evidence falling within the scope of the foregoing categories of items to be seized:

i.  evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents,

browsing history, user profiles, e-mail, e-mail contacts, chat
and instant messaging logs, photographs, and correspondence;

   ii.  evidence of the presence or absence of
software that would allow others to control the device, such as
viruses, Trojan horses, and other forms of malicious software,
as well as evidence of the presence or absence of security
software designed to detect malicious software;

   iii. evidence of the attachment of other devices;

   iv.  evidence of counter-forensic programs (and
associated data) that are designed to eliminate data from the
device;

   v.   evidence of the times the device was used;

   vi.  passwords, encryption keys, and other access
devices that may be necessary to access the device;

   vii. applications, utility programs, compilers,
interpreters, or other software, as well as documentation and
manuals, that may be necessary to access the device or to
conduct a forensic examination of it;

   viii.    records of or information about
Internet Protocol addresses used by the device;

   ix.  records of or information about the device's
Internet activity, including firewall logs, caches, browser
history and cookies, "bookmarked" or "favorite" web pages,
search terms that the user entered into any Internet search
engine, and records of user-typed web addresses.

  2.   As used herein, the terms "records," "documents,"
"correspondence," "programs," "applications," and "materials"

include records, documents, correspondence, programs,
applications, and materials created, modified, or stored in any
form, including in digital form on any digital device and any
forensic copies thereof.

## II.  SEARCH PROCEDURES FOR HANDLING POTENTIALLY PRIVILEGED INFORMATION ON THE SUBJECT DEVICES

3.    In searching the SUBJECT DEVICES (including the
forensic copies thereof), the following procedures will be
followed at the time of the search in order to avoid unnecessary
disclosures of any privileged attorney-client communications or
attorney work product.

4.    Law enforcement personnel conducting the investigation
and search and other individuals assisting law enforcement
personnel in the search (the "Investigation Team") have already
obtained custody of the SUBJECT DEVICES, which are capable of
containing evidence of the Subject Offenses, or capable of
containing data falling within the scope of the items to be
seized.  The Investigation Team shall facilitate the transfer of
the SUBJECT DEVICES to the "Privilege Review Team" (previously
designated individuals not participating in the investigation of
the case).  The Privilege Review Team, including a Privilege
Review Team Assistant United States Attorney ("PRTAUSA") or
PRTAUSAs, will then review the SUBJECT DEVICES as set forth
herein.  The Investigation Team will review only data from the
SUBJECT DEVICES that has been released by the Privilege Review
Team to the Investigation Team.

5.    The Privilege Review Team will, in their discretion, either search each SUBJECT DEVICE where it is currently located or transport it to an appropriate law enforcement laboratory or similar facility to be searched at that location.

6.    The Privilege Review Team and the Investigation Team shall complete the search discussed herein as soon as is practicable but not more than 180 days from the date of execution of the warrant.  The government will not search the SUBJECT DEVICES beyond this 180-day period without obtaining an extension of time order from the Court.

7.    The Investigation Team will provide the Privilege Review Team and/or appropriate litigation support personnel[29] with a list of "scope key words" to search for on the digital devices, to include words relating to the items to be seized as detailed above.  The Privilege Review Team will conduct an initial review of the SUBJECT DEVICES using the scope key words, and by using search protocols specifically chosen to identify documents and data that appear to be within the scope of the warrant.  The Privilege Review Team may also do a more detailed quality check of this data and the results of this initial review, to ensure that the key word search is effective. Documents and data that are identified by this initial review, after quality check, as not within the scope of the warrant will

_____

[29] Litigation support personnel and computer forensics agents or personnel, including IRS Computer Investigative Specialists, are authorized to assist both the Privilege Review Team and the Investigation Team in processing, filtering, and transferring documents and data seized during the execution of the warrant.

be maintained under seal and not further reviewed absent subsequent authorization.

8.   The Investigation Team will also provide the Privilege Review Team with a list of "privilege key words" to search for among the documents and data that are identified by the initial review and quality check described above as appearing to fall within the scope of the warrant, to include specific words associated with AVENATTI, J.R., F.M., and any of the following law firms (a) EA LLP; (b) A&A; (c) X-Law Group; (d) Foster Pepper PLLC; (e) Osborn Machler PLLC; (f) Eisenhower Carlson PLLC; (g) Talmadge/Fitzpatrick/ Tribe, PPLC; (h) The Brager Tax Law Group; (i) SulmeyerKupetz; (j) Baker & Hostetler LLP; (k) Shulman Hodges & Bastian LLP; (l) Legal & Tax Consulting Group; (m) Pachulski Stang Ziehl & Jones LLP; (n) Foley & Lardner LLP; (o) Raines Feldman, LLP; and (p) Pansky Markle Attorneys at Law.  The privilege key words shall also include the above referenced law firms' domain names and lawyers' email addresses, and generic words such as "privileged," "work product."  The Privilege Review Team will conduct a review of these documents and data using the privilege key words, and by using search protocols specifically chosen to identify documents and data containing potentially privileged information. Documents or data which are identified by this review as not potentially privileged may be given to the Investigation Team.

9.   Documents or data that the privilege key word searches identify as potentially privileged will be reviewed by a Privilege Review Team member to confirm that they contain

potentially privileged information.  Documents or data that are determined by this review not to be potentially privileged may be given to the Investigation Team.  Documents or data that are determined by this review to be potentially privileged will be given to the United States Attorney's Office for further review by a PRTAUSA.  Documents or data identified by the PRTAUSA after review as not potentially privileged may be given to the Investigation Team.  If, after review, the PRTAUSA determines it to be appropriate, the PRTAUSA may apply to the court for a finding with respect to particular documents or data that no privilege, or an exception to the privilege, applies.  Documents or data that are the subject of such a finding may be given to the Investigation Team.

10.  Documents or data identified by the PRTAUSA(s) after review as privileged (that are not subject to a finding by a court of no privilege or an exception to the privilege) or potentially privileged and outside the scope of the items to be seized shall be segregated and sealed together in an enclosure, the outer portion of which will be marked as containing potentially privileged information, and maintained by the investigative agency.  Such data or documents shall not be accessible by or given to the Investigation Team at any time absent authorization of the Court.  However, the Privilege Review Team may, in its discretion, store the privileged and potentially privileged data and documents in a folder or a set of folders in a document review platform database, such as Relativity or Eclipse, that remains inaccessible to the

Investigation Team.  The Privilege Review Team's access to this separate document review platform database shall cease upon expiration of the warrant.  However, litigation support personnel from the United States Attorney's Office, United States Department of Justice, and/or the investigating agency may continue to access this separately-maintained document review database for the purpose of database maintenance.

11.  The Investigation Team will search only the documents and data that the Privilege Review Team provides to the Investigation Team at any step listed above in order to locate documents and data that are within the scope of the search warrant.  The Investigation Team does not have to wait until the entire privilege review is concluded to begin its review for documents and data that are within the scope of the search warrant.  The Privilege Review Team may also conduct the search for documents and data within the scope of the search warrant if that is more efficient.  This second "scope" review is intended only to ensure that the initial scope key word review successfully eliminated data outside the scope of the search warrant from seizure.

12.  The Privilege Review Team will segregate any identifiable documents and/or data that it discovers during the search of the Subject Devices relating to Stephanie Clifford v. Donald J. Trump, No. 2:18-CV-2217-SJO-FFM (C.D. Cal.), the representation of Stephanie Clifford, and/or the representation of Julie Swetnick.  Such documents and/or data will be maintained under seal by the investigating agency without

further review as set forth in paragraphs 7 and 10 above absent subsequent authorization from the Court.  This provision, however, shall not preclude the Privilege Review Team or Investigation Team from reviewing financial and accounting records covered by paragraphs 1.d, 1.f, 1.g, and 1.r above, which reference the representations of Ms. Clifford or Ms. Swetnick.

13.  To the extent that any documents and/or data covered by paragraph 1.p above, such as attorney-client fee contracts, engagement letters, and client billing records, contain information that is potentially protected by the attorney-client privileged or the attorney-work-product doctrine, the Privilege Review Team shall redact all such potentially privileged information from the documents or data before releasing the documents and/or data to the Investigation Team unless the specific client agrees to waive the attorney-client privilege.

14.  If, upon review, a member of the Investigation Team determines that a document or data appears to contain potentially privileged information, the Investigation Team member shall discontinue its review of the document or data and shall immediately notify a member of the Privilege Review Team. The Investigation Team member may record identifying information regarding the potentially privileged document or data that is reasonably necessary to identify the document or data for the Privilege Review Team.  The Investigation Team shall not further review any documents or data that appears to contain such potentially privileged information until after the Privilege

Review Team has completed its review of the additional
potentially privileged information discovered by the
Investigation Team member.

15.   In performing the reviews, both the Privilege Review
Team and the Investigation Team may:

a.   search for and attempt to recover deleted,
"hidden," or encrypted data;

b.   use tools to exclude normal operating system
files and standard third-party software that do not need to be
searched; and

c.   use forensic examination and searching tools,
such as "EnCase," "FTK" (Forensic Tool Kit), Nuix, Axiom,
Relativity, and Eclipse, which tools may use hashing and other
sophisticated techniques.

16.   If either the Privilege Review Team or the
Investigation Team, while searching a SUBJECT DEVICE encounters
immediately apparent contraband or other evidence of a crime
outside the scope of the items to be seized, they shall
immediately discontinue the search of that device pending
further order of the Court and shall make and retain notes
detailing how the contraband or other evidence of a crime was
encountered, including how it was immediately apparent
contraband or evidence of a crime.

17.   If the search determines that a SUBJECT DEVICES does
contain data falling within the list of items to be seized, the
government may make and retain copies of such data, and may
access such data at any time.

18.   The government may retain the SUBJECT DEVICES
(including any forensic copy thereof), which have already been
obtained by the Investigation Team, but may not access data
falling outside the scope of the other items to be seized (after
the time for searching the device has expired) on the SUBJECT
DEVICES absent further court order.

19.   After the completion of the search of the SUBJECT
DEVICES, the government shall not access digital data falling
outside the scope of the items to be seized absent further order
of the Court.

20.   The special procedures relating to digital devices
found in this warrant govern only the search of digital devices
pursuant to the authority conferred by this warrant and do not
apply to any search of digital devices pursuant to any other
court order.

III. **REQUESTS FOR APPOINTMENT OF A SPECIAL MASTER**

21.   To the extent that AVENATTI, EA LLP, or any other
party intends to request that a special master be appointed to
handle the review of any potentially privileged information
seized during the execution of this Search Warrant, such a
request must be filed with this Court within seven days of the
execution of this Search Warrant.  The government will then have
seven days to file any opposition to such a request.

22.   Any request for the appointment of a special master
must, at a minimum, address the following issues:  (a) the legal
basis for the request; (b) the anticipated role of the special
master, should one be appointed; (c) proposed search and review

procedures to be followed by the special master, should one be appointed; (d) proposed procedures for the selection of a special master; (e) the names of at least three proposed special masters; and (f) the party's ability to pay for any costs and fees incurred by a special master.